[No. A093393. First Dist., Div. Two. Jan. 17, 2003.]

ZION LAVIE et al., Plaintiffs and Appellants, v.
PROCTER & GAMBLE CO. et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III and IV.

**COUNSEL**

Milberg Weiss Bershad Hynes & Lerach, Dennis Stewart, William S. Dato, Timothy G. Blood, Sheri Pym, Kevin K. Green; Steyer Lowenthal Boodrookas & Walker, Allan Steyer, Carlos A. Alvarez and D. Scott Macrae for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald A. Reiter and Seth E. Mermin, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Jules S. Zeman; Drinker, Biddle & Reath, David Fleming and William Hanssen for Defendants and Respondents.

**OPINION**

**KLINE, P. J.—**

*Introduction*

This appeal arises out of appellant's challenge to allegedly deceptive television commercials supporting the launch of Aleve, a nonprescription pain relief product developed, manufactured and marketed by respondents. Plaintiff-appellant Zion Lavie appeals from the judgment against him and in favor of defendants-respondents Procter & Gamble Co. (Procter & Gamble),

Syntex Health Products, Inc. (Syntex), Procter-Syntex Health Products Company (Procter-Syntex), and others,[1] following a court trial upon appellant's action challenging television advertising supporting the launch of Procter-Syntex nonprescription pain reliever Aleve in the mid-1990's. Among other claims, appellant alleged the television advertising promoting Aleve violated the California unfair competition law (Bus. & Prof. Code, § 17200) (UCL) and this state's false advertising law (Bus. & Prof. Code, § 17500)[2] because the explicit claim of the ads that "Aleve is gentler to the stomach lining than aspirin" was false and/or likely to mislead members of the public and because the advertisements contained an implicit and false message that Aleve was gentle to the stomach and would not cause stomach upset. At the end of a 13-day bench trial, the trial court found in favor of respondents on all counts, including finding that respondents did not engage in unlawful, unfair or fraudulent business practices or unfair, deceptive or misleading advertising within the meaning of section 17200 or 17500. The court found the substantial weight of the evidence supported the conclusion that the phrase "Aleve is gentler to your stomach lining than aspirin" was a true statement and that the challenged ads were not likely to deceive reasonable consumers. The court also found that the ads did not target particularly gullible consumers and that the evidence did not show that a substantial number of consumers were deceived into thinking Aleve would not cause gastrointestinal side effects.

Appellant contends the judgment must be reversed as the court erred: (1) in employing the wrong methodology in determining what messages were conveyed by the commercial, relying upon its own intuition rather than viewing the ads from the vantage point of a reasonable consumer; (2) by disregarding evidence showing the messages were misleading and unsupported by the medical data; and (3) by disregarding evidence that these messages were impressed upon a significant number of consumers and were therefore likely to deceive the public. Appellant also contends that the evidence established defendants' conscious decision to communicate implied messages they knew would mislead many California consumers, and that such was an unfair business practice under section 17200. Finally, he argues that if the matter is reversed, the trial court on remand has discretion to enter restitution relief.

The Attorney General has filed an amicus curiae brief in this appeal, contending the likelihood of deception under the UCL must be measured by

---

[1]Other defendants included respondents Procter & Gamble Health Products, Inc., Richardson-Vicks, Inc., Procter & Gamble Distributing Company, Hoffmann-La Roche, Inc., and Roche Laboratories, Inc.

[2]All statutory references are to the Business and Professions Code, unless otherwise indicated.

the standard of the "least sophisticated consumer" and that the trial court erred in using a "reasonable consumer" standard to determine whether the advertisements were likely to deceive the public.

We shall affirm the judgment.

*The lawsuit.*[3]

In June 1994, Aleve was brought to the market as a new addition to over-the-counter pain relief products. Appellant, aged 47, is a computer programmer and manager. He testified that he took Aleve in mid-December 1994 for relief of cold symptoms. Twelve years before, he had been diagnosed with an ulcer and his doctor had told him to avoid aspirin. The ulcer had been inactive. Appellant decided to try Aleve after seeing some newspaper and television ads. He took Aleve over the weekend and on the following Monday was hospitalized overnight with serious gastrointestinal bleeding. His doctor told him not to use Aleve and appellant presented evidence the bleeding was caused by his ingestion of Aleve.

Appellant wrote to Procter & Gamble about his problem, stating he believed the company should be working on revising its warning label. Procter & Gamble responded by offering him his purchase price plus interest and requesting the name of his doctor, so the matter could be looked into. Plaintiff did not accept return of the purchase price. He sued respondents on various claims centering on the allegation that the television advertising for Aleve was false, misleading and/or likely to mislead. He asserted claims both individually and on behalf of the general public for violation of the UCL (§ 17200 et seq.) and the false advertising act (§ 17500). He also asserted claims for common law fraud, negligent misrepresentation, and violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). Although he eventually waived any claims for personal injury, appellant sought restitution for himself and the general public with respect to his UCL and false advertising claims in the amount of all sales of Aleve to customers in California (a sum ranging from approximately $104 million to $140 million) and injunctive relief in the form of corrective advertising. Appellant also sought actual and punitive damages under his common law and Consumers Legal Remedies Act claims. Finally, he sought to have any monetary relief awarded under the UCL or the Consumers Legal Remedies Act enhanced up to treble the amount awarded pursuant to Civil Code section 3345.

At the end of a 13-day bench trial, the Honorable Isabella H. Grant found against appellant and in favor of respondents on all claims, including finding

---

[3]An extended description of the facts and evidence at trial is set forth hereafter in the substantial evidence discussion.

that defendants did not engage in unlawful, unfair or fraudulent business practices or unfair, deceptive or misleading advertising within the meaning of section 17200 or 17500. Judgment was entered on October 11, 2000, and this timely appeal followed. Appellant challenges the judgment against him on his UCL and false advertising claims only.

## I. California laws prohibiting unfair competition (§ 17200 et seq.) and false advertising (§ 17500).*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. "Reasonable consumer" versus "least sophisticated consumer" standard.

### A. Amicus curiae brief raising issue of the standard.

In an amicus curiae brief filed in this appeal, the Attorney General argues that the trial court committed reversible error in failing to use a "least sophisticated consumer" standard rather than a "reasonable consumer" standard to determine whether the advertisements were likely to mislead or deceive the public. It is analytically necessary to address this issue first, for if we agreed with the Attorney General, the additional issues raised on this appeal likely would be rendered moot.

Both parties and the trial court agreed below that the "reasonable consumer" standard applied and appellant did not raise this claim of error on appeal. ▮ Ordinarily, "[a]micus curiae must take the case as they find it." *California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274-1275 [36 Cal.Rptr.2d 404]; accord, Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 9:210.1 (rev. #1 2002).) " ' "[A]n appellate court will consider only those questions properly raised by the appealing parties. Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered [citations]." ' " (*Younger v. State of California* (1982) 137 Cal.App.3d 806, 813-814 [187 Cal.Rptr. 310]; see *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 711, fn. 1 [209 Cal.Rptr. 682, 693 P.2d 261] (conc. opn. of Bird, C. J.); *E.L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 510-511 [146 Cal.Rptr. 614, 579 P.2d 505].)

---

*See footnote, *ante*, page 496.

However, the rule is not absolute. An appellate court has discretion to consider new issues raised by an amicus. (See *Fisher v. City of Berkeley, supra,* 37 Cal.3d 644, 654-655 [Supreme Court considered argument for invalidating rent control ordinance raised by amicus curiae]; *E.L. White, Inc. v. City of Huntington Beach, supra,* 21 Cal.3d 497, 510-511; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶ 9:210.1 (rev. #1 2002).) Although we do not depart lightly from the general rule, we are persuaded that this case is one in which it is not only permissible, but also appropriate to do so. The Supreme Court has justified consideration of a new issue on appeal for the first time "when the issue posed is purely a question of law based on undisputed facts, and involves important questions of public policy. [Citations.]" *(Fisher v. City of Berkeley, supra,* at pp. 654-655, fn. 3.)

The standard to be used in evaluating whether an advertisement is deceptive under the UCL is purely a question of law and certainly has important public policy implications for California consumers and businesses. Moreover, the Attorney General has a particular interest in the interpretation of sections 17200 and 17500, as these sections "are the basic tools of the Attorney General and the district attorneys in combating consumer fraud." *(People v. Superior Court (Olson)* (1979) 96 Cal.App.3d 181, 189, fn. 6 [157 Cal.Rptr. 628]; see also *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 275, fn. 8 [41 Cal.Rptr.2d 220, 895 P.2d 56].) The Attorney General and district attorneys have an independent role in the enforcement of this state's false advertising laws. They are authorized to prosecute violations of the UCL criminally (see § 17500) and may also seek redress through the bringing of civil law enforcement cases seeking equitable relief and civil penalties beyond those available to private parties (see §§ 17203, 17206, 17535, 17536). The possibility that a published decision could contain a misstatement of law as to a fundamental provision of these statutes is a cause of particular concern to the Attorney General. The Legislature has recognized the importance of amicus curiae participation by the Attorney General in these appeals by requiring that the Attorney General and the district attorney of the county in which the proceeding occurred receive notice and copies of the briefs in any appeal in which sections 17200 and 17500 are at issue. (§§ 17209, 17536.5; Cal. Rules of Court, rule 15(e)(2).)

Finally, the question of the standard to be applied in determining whether the advertisements here violated the UCL is inherent in this case. If, as the Attorney General argues, the parties and the trial court applied an erroneous standard, a rule of decision relying upon that incorrect standard could have profound precedential impact on the operation and enforcement of the UCL.

For all of these reasons, we exercise our discretion to consider the question raised by the Attorney General.[4]

B. *"Reasonable consumer" or "least sophisticated consumer."*

 The Attorney General contends that the trial court must apply a "least sophisticated consumer" standard in determining whether an advertisement was likely to mislead the public. In a lengthy discussion of the origins of the UCL, he argues that California's deceptive advertising law has always prohibited advertising that has the capacity or tendency to mislead members of the public, including the unwary, unsophisticated, and the gullible. Asserting that an advertisement violates the law if it is false or if it has the capacity to mislead unwary, unsophisticated or the most gullible consumers, the Attorney General maintains, the "trial court's failure to apply the 'least sophisticated consumer' standard as the measure of deception and the court's imposition of responsibility on consumers to investigate the merits of advertising claims were error."

We disagree. California and federal courts applying the UCL have never applied a "least sophisticated consumer standard," absent evidence that the ad targeted particularly vulnerable customers. Rather, they have consistently applied a standard closer to an ordinary or "reasonable consumer" standard to evaluate unfair advertising claims. Nor do we view the court's application of the "reasonable consumer" standard as requiring consumers to investigate the merits of advertising claims.

As a necessary corollary to his argument, the Attorney General urges that we reject *Freeman v. Time, Inc.* (9th Cir. 1995) 68 F.3d 285 (*Freeman*) and *Haskell v. Time, Inc.* (E.D.Cal. 1994) 857 F.Supp. 1392 (*Haskell*), as well as other federal decisions which have concluded that California employs the reasonable person or reasonable consumer standard in evaluating deceptive advertising. In *Freeman*, the Ninth Circuit Court of Appeals agreed with the district court in *Haskell* that the "reasonable consumer" standard was the appropriate test for a violation of the UCL. Recognizing that to state a claim under the UCL "one need only show that 'members of the public are likely to be deceived' " (*Bank of the West v. Superior Court, supra,* 2 Cal.4th. at p. 1267, quoting *Chern v. Bank of America* (1976) 15 Cal.3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310]), *Freeman* rejected the contention that to so demonstrate, the plaintiff "need show only that some members of the public, such as the elderly, minors or the mentally disadvantaged are likely to be

---

[4]The parties have had an opportunity to address the issue raised by the Attorney General and have done so. Respondents have filed an answer brief to the Attorney General's amicus curiae brief and appellant has addressed the Attorney General's argument in his reply brief.

deceived." (*Freeman*, at p. 289.) Rather, the court adopted the "reasonable person" standard championed in *Haskell* and variants thereof applied in other cases. (*Ibid.*, also citing *State Bd. of Funeral Directors v. Mortuary in Westminster Memorial Park* (1969) 271 Cal.App.2d 638, 642 [76 Cal.Rptr. 832] ["[w]hat a person of ordinary intelligence would imply" from ads in a § 17500 false advertising case]; *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.* (9th Cir. 1960) 283 F.2d 551, 557 [applying "the eye of the ordinary purchaser" standard to interpretation of California's unfair competition and misleading advertising law with respect to a similarly designed package claim].) *Freeman* reasoned that the "ordinary person" standard was consistent with the standard articulated in *Bank of the West v. Superior Court,*—whether members of the public are "likely" to be deceived. (*Freeman, supra*, at p. 289.)

Both *Freeman* and *Haskell* pointed out that the "reasonable person" standard was the common standard in the law in a number of contexts involving claims of deception and that it is the standard the Federal Trade Commission (FTC) uses in interpreting section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), which contains similar provisions.

As *Haskell* observed, "[T]he reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought. It is the standard for false advertising and unfair competition under the Lanham Act, [citations], for securities fraud [citation], for deceit and misrepresentation [citations] and for common law unfair competition [citation]. This list no doubt could be much expanded. Section 17500 of the Business and Professions Code, on which plaintiff proceeds, in no way expressly departs from the 'reasonable person' standard so well rooted in the law. . . . Indeed, by explicitly imposing a 'reasonable care' standard on advertisers, § 17500 impliedly adopts such a standard for consumers as well: unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably well. [Citation.]" (*Haskell, supra*, 857 F.Supp. at pp. 1398-1399; accord, *Freeman, supra*, 68 F.3d at p. 289.)

*Haskell* also relied upon the FTC's interpretation of the Federal Trade Commission Act because of the relationship between the UCL and the federal act. ■ "[T]he Unfair Business Practices Act is one 'of the so-called "little FTC Acts" of the 1930's, enacted by many states in the wake of amendments to the Federal Trade Commission Act enlarging the commission's regulatory jurisdiction to include unfair business practices that harmed, not merely the interests of business competitors, but of the general public as well.' *Rubin v. Green* [(1993)] 4 Cal.4th 1187 [17 Cal.Rptr.2d 828, 847 P.2d 1044] : . . . See *Bank of the West v. Superior Court*, [*supra*], 2

Cal.4th 1254 . . . . Because of this relationship between the [UCL] and the Federal Trade Commission Act, judicial interpretations of the federal act have persuasive force. [Citations.] Since 1982 the FTC has interpreted 'deception' in Section 5 of the Federal Trade Commission Act to require a showing of 'potential deception of "consumers acting reasonably in the circumstances," not just any consumers.' *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d 1431, 1436 (9th Cir.1986) relying on *Cliffdale Assocs., Inc.,* 3 CCH Trade Reg.Rep. ¶ 22,137, 103 F.T.C. 110 (1984)." (*Haskell, supra,* 857 F.Supp. at p. 1399.)[5]

■ We agree with the *Haskell* court that a reasonable consumer may be unwary or trusting. Where advertising is aimed at a particularly susceptible audience, such as the preschool children targeted by the advertisements in *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197 [197 Cal.Rptr. 783, 693 P.2d 660], its truthfulness must be measured by the impact it will likely have on members of that group, not others to whom it was not primarily directed. (See *id.* at p. 214; *In the Matter of Kirchner* (1963) 63 F.T.C. 1282 [1983 FTC Lexis 71].) We also recognize that an advertisement may be designed to appeal to specific groups of consumers, although it is ostensibly directed to the public at large. Where the plaintiff contends that a more vulnerable subgroup is the true target of such an advertisement, a question of fact is presented, which the trial court must resolve.

■ However, unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a

---

[5]In *Cliffdale Associates, Inc.,* the majority of FTC commissioners asserted that the analytical approach they were adopting was not new in requiring that the challenged act or practice be "likely to mislead" or that the "act or practice be considered from the perspective of a 'consumer acting reasonably in the circumstances' . . . ." (*In the Matter of Cliffdale Associates, Inc., supra,* 103 F.T.C. 110 [1984 FTC Lexis 71, *105].) "Virtually all representations, even those that are true, can be misunderstood by some consumers. The Commission has long recognized that the law should not be applied in such a way [a]s to find that honest representations are deceptive simply because they are misunderstood by a few. Thus, the Commission has noted that an advertisement would not be considered deceptive merely because it could be 'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." (1984 FTC Lexis *105-106, fns. omitted.) The majority also noted that where a representation or practice is directed at a distinctive target group, the commission will determine the effect of the representation upon a reasonable member of that group. (*Id.,* *106, fn. 8.)

The dissenting commissioner argued that the majority had "raised the evidentiary threshold for deception cases" by substituting " 'likely to mislead' " for the " 'tendency or capacity' to mislead" and by adopting the "reasonable consumer" standard. (1984 FTC Lexis *126-127 (conc. and dis. opn. of Pertschuk, Comr.).)

In *Southwest Sunsites, Inc. v. F.T.C., supra,* 785 F.2d 1431, the Ninth Circuit recognized that the FTC had applied a "new" standard. (*Id.* at p. 1435.)

reasonable consumer. (*Haskell, supra,* 857 F.Supp. at p. 1399.) As noted by the FTC many years ago: "Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark. Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not. A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." (*In the Matter of Kirchner, supra,* 63 F.T.C. at p. 1282.)

Federal courts have followed *Freeman* and *Haskell* in adopting the "reasonable consumer" standard for California UCL claims: (See *Southwest Sunsites, Inc. v. F.T.C., supra,* 785 F.2d 1431; *Churchill Village, L.L.C. v. General Elec. Co.* (N.D.Cal. 2000) 169 F.Supp.2d 1119, 1131 ["A reasonable consumer standard applies to a false advertising claim under the UCL."]; *Cairns v. Franklin Mint Co.* (C.D.Cal. 1998) 24 F.Supp.2d 1013, 1037 ["To state a claim under [sections 17200 and 17500 et seq.], one need only show that 'members of the public are likely to be deceived.' [Citation.] A claim based on false or misleading advertising and unfair business practices 'must be evaluated from the vantage of a reasonable consumer.' [Citation.]"].)

The Attorney General contends the FTC's reinterpretation of the Federal Trade Commission Act should not affect what the Attorney General characterizes as the traditional interpretation of the UCL by California courts. We disagree. FTC interpretation of the federal act has always been viewed as "more than ordinarily persuasive" (e.g., *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at pp. 1263-1264) in its construction of the breadth of the protection afforded consumers under the UCL and we see no good reason to depart from that view here. More importantly, we believe that California case law has never embraced a "least sophisticated consumer test" to determine whether a UCL violation has occurred.

The California Supreme Court recognized the "reasonable consumer" standard in *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26 [77 Cal.Rptr.2d 709, 960 P.2d 513]. There, prospective sellers of real property sued a title insurer who refused to issue title insurance policies on property acquired by plaintiffs at a tax sale, despite the company's representation that title insurance would be issued on any property with good title. The Supreme Court held, among other things, that the plaintiffs had stated a cause of action for unfair competition under the UCL. "If plaintiffs are able

*to establish that a tax·deed is 'good' title within the understanding of a reasonable consumer,* the advertisement may be conduct prohibited as unfair competition under the section 17200 definition as 'deceptive, untrue or misleading advertising.'" (*Id.* at p. 55, italics added.)

■ Other California cases, while not specifically referring to the reasonableness of the consumer, acknowledge that the standard to be applied in assessing whether the conduct or advertisement violates the UCL is whether it is "likely to deceive" the consumer. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111 [101 Cal.Rptr. 745, 496 P.2d 817]; *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167-1169 [93 Cal.Rptr.2d 439]; *AICCO Inc. v. Ins. Co. of North America* (2001) 90 Cal.App.4th 579, 588 [109 Cal.Rptr.2d 359]; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229], disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at pp. 184-185; *Chern v. Bank of America, supra,* 15 Cal.3d 866, 876; *Day v. A T & T Corp.* (1998) 63 Cal.App.4th 325, 332-334 [74 Cal.Rptr.2d 55].) "Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

As *Haskell* noted, "The statement in some of the case law to the effect that § 17500 protects 'unwary consumers' is only descriptive of the effect of § 17500 and does not set the standard for liability. The reasonable consumer may well be unwary. The use of this language does not suggest that the Act protects the unwary, unreasonable consumer. Nor do statements that the Act protects the 'public as a whole' suggest a different standard from the average or reasonable member of the public. *See Sunset House Distrib. Corp. v. Coffee Dan's, Inc.* [(1966)] 240 Cal.App.2d 748, 50 Cal.Rptr. [44,] 54 ('the public as a whole, acting as reasonable persons')." (*Haskell, supra,* 857 F.Supp. at p. 1399, fn. 10.)

None of the cases cited by the Attorney General arising under the UCL or its analog, the Federal Trade Commission Act, holds that the unreasonable expectations or perceptions of the least sophisticated consumer or most gullible consumer would be protected. Rather, most of the cases cited by the Attorney General stand for the proposition that whether an advertisement or business practice violates the UCL is *not* measured by the perception of the *most* sophisticated, wary, or expert consumer, but by the likely effect on the normally credulous consumer. The Attorney General's error is his equating

of the rejection of a standard requiring heightened consumer vigilance with the adoption of a "least sophisticated consumer" standard. The two clearly are not the same.

*Donaldson v. Read Magazine* (1948) 333 U.S. 178, 189 [68 S.Ct. 591, 597, 92 L.Ed. 628], which did not arise under the Federal Trade Commission Act, but which is extensively quoted and relied upon by the Attorney General, involved a challenge to an order by the United States Postmaster finding plaintiffs had used the mail to further a fraudulent scheme and directing that mail be returned to the senders marked "Fraudulent," and that postal money order sums be returned. The Supreme Court articulated a standard more like the "reasonable consumer" standard than the "least sophisticated consumer" standard posited by the Attorney General, as the court explained that an advertisement may be literally true, but nonetheless misleading to the ordinary reader: ▮ "Advertisements as a whole may be completely misleading although every sentence separately considered is literally true. This may be because things are omitted that should be said, or because advertisements are composed or purposefully printed in such way as to mislead. [Citations.] That exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered the true nature of the contest's terms is not sufficient to bar findings of fraud by a factfinding tribunal. Questions of fraud may be *determined in the light of the effect advertisements would most probably produce on ordinary minds.* [Citations.] People have a right to assume that fraudulent advertising traps will not be laid to ensnare them. 'Laws are made to protect the trusting as well as the suspicious.' " (*Id.* at pp. 188-189 [68 S.Ct. at p. 597], italics added; see also *Trade Comm'n v. Education Society* (1937) 302 U.S. 112, 116 [58 S.Ct. 113, 115, 82 L.Ed. 141] ["The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious. . . . [T]he rule of caveat emptor should not be relied upon to reward fraud and deception."].[6])

We agree that a "reasonable consumer" need not be "exceptionally acute and sophisticated." (*Donaldson v. Read Magazine, supra,* 333 U.S. at p. 189

---

[6]In *Trade Comm'n v. Education Society,* the court described the scheme and its impact on consumers as follows: "It was clearly the practice of respondents through their agents, in accordance with a well matured plan, to mislead customers into the belief that they were given an encyclopedia, and that they paid only for the loose leaf supplement. That representations were made justifying this belief; that the plan was outlined in letters going directly from the companies; that men and women were deceived by them—there can be little doubt. Certainly the Commission was justified from the evidence in finding that customers were misled. *Testimony in the record from citizens of ten states—teachers, doctors, college professors, club women, business men—proves beyond doubt that the practice was not only the*

[68 S.Ct. at p. 597].) Nor need a reasonable consumer necessarily be wary or suspicious of advertising claims.

Nor is it the case, as suggested by the Attorney General, that California appellate cases predating *Cliffdale Associates, Inc.,* particularly *People v. Wahl* (1940) 39 Cal.App.2d Supp. 771 [100 P.2d 550] and *Dept. of Agriculture v. Tide Oil Co.* (1969) 269 Cal.App.2d 145 [74 Cal.Rptr. 799], recognized the "least sophisticated consumer" standard. Rather, California courts consistently have looked to the ordinary consumer within the target population.

As stated in *People v. Wahl, supra,* 39 Cal.App.2d Supp. 771, 774: "The advertisement, although literally true, was nevertheless deceptive and misleading in its implications and this is sufficient to bring it under the ban of the statute.[7] The fact that a Firestone dealer, or other person who knew the whole truth, would not be led astray by it does not make it lawful. None of the advertising described in the statute, even though utterly false, could harm one who knew the truth, but such laws are passed to protect the general public who read advertisements and are likely to know nothing of the facts, not the dealers who publish them or other experts on their subject-matter." (*Id.* at pp. 773-774.)

In *Dept. of Agriculture v. Tide Oil Co., supra,* 269 Cal.App.2d 145, the appellate court acknowledged that advertising signs which stated, " 'WE GIVE 2[cent] a GAL. CASH DISC. COUPON,' or variations of similar phraseology" came within the scope of [former] section 20880, subdivisions (b) and (c) prohibiting certain advertising practices by service stations, as the signs could be read to refer to a designated numerical discount per gallon in cash. (*Id.* at pp. 154-155.) "While a sophisticated buyer may not attribute such meaning to the advertisement, it is within the regulatory ambit of the Legislature to protect the more gullible public." (*Id.* at p. 155, fn. omitted.) The Attorney General erroneously construes this sentence to mean that the Legislature intended to protect members of the public "more gullible" than ordinary members of the public. We think the sentence merely embodies the idea that the general public is "more gullible" than the "sophisticated buyer." This interpretation is confirmed by an accompanying footnote, in which the court quoted from the holding in *Donaldson v. Read Magazine, supra,* 33

_commonly accepted sales method for respondents' encyclopedias, but that it successfully deceived and deluded its victims." (Trade Comm'n v. Education Society, supra, 302 U.S. 112, 116-117 [58 S.Ct. 113, 115], italics added.)_

[7]The statute referenced was former Penal Code section 654a, prohibiting advertising containing any statement which is "false or untrue, in any respect, or which is deceptive or misleading, and which is known or which by the exercise of reasonable care should be known, to be false or untrue, deceptive or misleading." (Stats. 1915, ch. 634, § 1, pp. 1252-1253.)

U.S. 178, that " 'Questions of fraud may be determined in the light of the effect advertisements *would most probably produce on ordinary minds.* [Citations.]' " (*Dept. of Agriculture v. Tide Oil Co., supra,* at pp. 155, fn. 7, italics added.)

Two other more recent cases, *Chern v. Bank of America, supra,* 15 Cal.3d 866 and *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861 [85 Cal.Rptr.2d 301], also relate to this issue.

In *Chern v. Bank of America, supra,* 15 Cal.3d 866, the court held that the practice of quoting a per annum rate of interest computed on the basis of a 360-day year was likely to mislead a bank's potential customers, and that such practice could be enjoined as false and misleading advertising under the false advertising law and the UCL. (§§ 17500, 17535; [former] Civ. Code § 3369, subd. 2 [now contained in § 17200 et seq.].) (*Chern,* at pp. 876-877.) "In the absence of evidence to the contrary," the court reasoned, "we must assume that the public is *likely to understand* that a 'per annum' rate is an annual rate based on a 365-day calendar year. The fact that it may be 'customary' business practice within the banking community to quote interest rates on the basis of a 360-day year does not necessarily establish that the practice is not misleading to the general public with whom defendant deals." (*Ibid.,* italics added.)

In *South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th 861, a case involving sophisticated businesses in an ongoing relationship, rather than the consuming public as a whole, the plaintiff auto dealership contended that General Motors Acceptance Corporation (GMAC)'s business practice of using a similar method to calculate interest on loans to California dealerships violated sections 17200 and 17500 as a matter of law. The appellate court affirmed the trial court's conclusion that the plaintiff had failed to prove GMAC's use of the 365/360 method to calculate interest on wholesale floor plan loans violated section 17200 because the dealership knew, understood, and agreed to that method of interest calculation. Analyzing the issue, the court applied the "reasonable consumer" standard: "The trial court correctly noted that to recover under section 17200, South Bay had the burden to establish GMAC's conduct was unlawful, unfair, fraudulent or in violation of section 17500. (*State Farm Fire & Casualty Co. v. Superior Court* [(1996)] 45 Cal.App.4th [1093,] 1102 [53 Cal.Rptr.2d 229].) The trial court also correctly noted that to recover under the third or fourth prong of section 17200, South Bay had the burden to establish GMAC engaged in a business practice *'likely to deceive' the reasonable consumer to whom the practice was directed. (Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1267; *Committee on Children's Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d at p. 211; *Chern v.*

*Bank of America, supra,* 15 Cal.3d at p. 876.)" (*South Bay Chevrolet*, at p. 878, italics added.) *South Bay* was a case involving loans made to "a financially sophisticated automotive dealership with knowledge of the lender's use of the 365/360 method in the parties' ongoing relationship." (*Id.* at p. 883.) Because the practice was directed to automobile dealerships and not to the general public, the court affirmed the trial court's use of a "reasonable dealership" standard, distinguishing *Chern* as a case directed toward the consuming public. (*Id.* at p. 884.)

Read together, *Chern v. Bank of America, supra,* 15 Cal.3d 866 and *South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th 861, support our conclusion that the standard applied in UCL and false advertising cases is that of the ordinary consumer acting reasonably under the circumstances. Where the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading to the public will be viewed from the vantage point of members of the targeted group, not others to whom it is not primarily directed. (See *Committee on Children's Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d 197.)[8]

That the parties, who were represented by very capable counsel, accepted the reasonableness standard applied by the trial court reflects how well-established the reasonableness standard is in California law.

Nor are we persuaded by the Attorney General's argument that federal courts have continued to apply the "least sophisticated consumer" standard in non-FTC cases, such as those arising under the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), prohibiting debt collectors

---

[8]In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th 163, the California Supreme Court turned to section 5 of the Federal Trade Commission Act for guidance in formulating a more precise test for determining what is "unfair" under the "unfair methods of competition" prohibition of the UCL governing injuries to competitors. The court did *not* expressly adopt the federal test for injury to *consumers*. (*Cel-Tech*, at p. 185.) However, the willingness of the court to follow the federal lead in defining "unfairness" under the UCL for competitors indicates the court would also follow the federal lead in determining the standard for unfairness relating to consumers, absent clear language in the statute or in case law refusing to do so. For example, California law clearly rejects incorporation of a reliance or damages requirement into the UCL. (E.g., *Day v. AT&T Corp., supra,* 63 Cal.App.4th 325, 334; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th 1093, 1105; *AICCO, Inc. v. Insurance Co. of North America, supra,* 90 Cal.App.4th 579, 588; *Chern v. Bank of America, supra,* 15 Cal.3d at pp. 875-876; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1267; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1137 [111 Cal.Rptr.2d 296].) But, as we have explained, California law has consistently measured whether an advertisement or practice is "likely to mislead" the consuming public by the ordinary consumer—a standard which implies not sophistication or wariness, but reasonableness in the circumstances.

from using "any false, deceptive, or misleading representation or means" to collect a debt. (15 U.S.C. § 1692e.) Cases arising under the federal debt collection statutes are inapposite. Even the Ninth Circuit, which recognized the "reasonable" consumer standard for cases arising under the UCL in *Freeman*, agreed that a "least sophisticated debtor standard" applied under the plain language of the Fair Debt Collection Practices Act. (See *Swanson v. Southern Oregon Credit Service, Inc.* (9th Cir. 1988) 869 F.2d 1222, 1227.)[9] To the extent federal law provides the template for our analysis, we look to the Federal Trade Commission Act, not to the Fair Debt Collection Practices Act.

The trial court did not err in assessing UCL and unfair advertising claims using a reasonable consumer standard.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*Conclusion*

We conclude that substantial evidence supports the trial court's finding that plaintiff had failed to show the commercials were likely to deceive members of the public, and that the commercials at issue were neither deceptive nor misleading under the UCL or the false advertising law. Therefore, we need not reach issues regarding the availability of restitution relief or the reach of the court's equitable powers in UCL cases.

The judgment is affirmed. Respondents are awarded their costs on appeal.

Lambden, J., concurred.

---

[9]Moreover, even courts under the Fair Debt Collection Practices Act have applied a somewhat modified test, employing the term " 'unsophisticated,' instead of the phrase, 'least sophisticated,' to describe the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." (*Gammon v. GC Services Ltd. Partnership* (7th Cir. 1994) 27 F.3d 1254, 1257.) As stated by the Seventh Circuit Court of Appeals: "[W]e believe that a modification of the least sophisticated consumer standard as articulated in cases such as *Clomon* [*v. Jackson* (2d Cir. 1993) 988 F.2d 1314,] would relieve the incongruity between what the standard would entail if read literally, and the way courts have interpreted the standard. [¶] It strikes us virtually impossible to analyze a debt collection letter based on the reasonable interpretations of the least sophisticated consumer. Literally, the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. Even assuming that he would be willing to do so, such a consumer would likely not be able to read a collection notice with care (or at all), let alone interpret it in a reasonable fashion. Courts which use the 'least sophisticated consumer' test, however, routinely blend in the element of reasonableness. [Citation.]" (*Gammon v. GC Services Ltd. Partnership, supra,* at p. 1257, fn. omitted.)

*See footnote, *ante,* page 496.

**HAERLE, J.**—I concur in everything my colleagues say, but I would have phrased matters a bit more strongly regarding the position urged in the Attorney General's amicus curiae brief.

I find the Attorney General's position both troubling and startling for three separate and distinct reasons. First of all, and certainly most importantly, it effectively asks us to not only create new law but to do so in direct contradiction of precedent from our own Supreme Court. As the majority notes, that court has stated that the test under Business and Professions Code section 17200 is whether a "reasonable consumer" would have been misled. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513].) As I am sure the Attorney General's Office understands, we are required to follows applicable precedent from our Supreme Court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Second, and aside from our mandate to follow binding precedent, the Attorney General essentially asks us to become *the only court* to hold that a violation of Business and Professions Code section 17200 is evaluated by whether the representation may impact on the "least sophisticated consumer." As the majority opinion points out, every other court that has considered that issue has declined to do so.

Third and finally, the position adopted in those cases is consistent with common sense; the Attorney General's position is not. That position would, I suggest, allow a Business and Professions Code section 17200 cause of action to the consumer who interprets literally the radio ads saying "Albertson's is *your* store" and goes to court when he is not given access to his local store's daily receipts.