**Maritza PELAYO**

v.

**NESTLE USA, INC., et al.**

**Case No. CV 13–5213–JFW (AJWx).**

United States District Court,
C.D. California.

Oct. 25, 2013.

Elaine A. Ryan, Lindsey Gomez–Gray, Patricia N. Syverson, Bonnett Fairbourn Friedman & Balint PC, Phoenix, AZ, Manfred Patrick Muecke, Bonnett Fairbourn Friedman and Balint PC, San Diego, CA, Mila F. Bartos, Robert O. Wilson, Finkelstein Thompson LLP, Washington, DC, Stewart M. Weltman, Stewart Weltman LLC, Chicago, IL, Behram V. Parekh, Kirtland and Packard LLP, El Segundo, CA, for Maritza Pelayo.

Carmine R. Zarlenga, Mayer Brown LLP, Washington, DC, Dale J. Giali, Mayer Brown LLP, Los Angeles, CA, for Nestle USA, Inc., et al.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [filed 9/23/13; Docket No. 30]

JOHN F. WALTER, District Judge.

On September 23, 2013, Defendants Nestle USA, Inc. and Nestle Prepared Foods Company Inc. (collectively, "Defendants") filed a Motion to Dismiss First Amended Complaint ("Motion"). On October 7, 2013, Plaintiff Maritza Pelayo ("Plaintiff") filed her Opposition. On October 14, 2013, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for October 28, 2013 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. Factual and Procedural Background [1]

On July 18, 2013, Plaintiff, on behalf of herself and others similarly situated, filed this class action lawsuit against Defendants (Docket No. 1), and, on August 19, 2013, she filed a First Amended Complaint (Docket No. 18). The First Amended Complaint focuses on thirteen of Defendants' stuffed pasta products, which can be generally described as nationally manufactured and marketed packaged pasta found in the refrigerated aisle of grocery stores: (1) Buitoni Four Cheese Ravioli; (2) Buitoni Light Four Cheese Ravioli; (3) Buitoni Whole Wheat Four Cheese Ravioli; (4) Buitoni Three Cheese Ravioli; (5) Buitoni Three Cheese Tortellini; (6) Buitoni Whole Wheat Three Cheese Tortellini; (7) Buitoni Spinach Cheese Tortellini; (8) Buitoni Cheese & Roasted Garlic Tortellini; (9) Buitoni Spinach & Ricotta Tortellini; (10) Buitoni Herb Chicken Tortellini; (11) Buitoni Chicken Marsala Ravioli; (12) Buitoni Chicken & Prosciuto Tortellini; and (13) Buitoni Mixed Cheese Tortellini (collectively, "Buitoni Pastas").[2] First Amended Complaint, ¶¶ 1, 10–11, and 14–15.

Plaintiff alleges that the product labeling on Buitoni Pastas which uses the term "All Natural" is false, misleading, and rea-

---

1. The Court's discussion of the facts is based on Plaintiff's First Amended Complaint and certain documents submitted by Defendants of which the Court takes judicial notice as discussed below.

2. In her Opposition, Plaintiff withdraws her claims against Defendants regarding Buitoni Herb Chicken Tortellini, Buitoni Chicken Marsala Ravioli, and Buitoni Chicken & Prosciuto Tortellini products. Opposition, 1:8–19.

Plaintiff's decision to withdraw her claims as to those products appears to be in direct response to Defendants' well-taken preemption argument and her counsel's review of United States Department of Agriculture ("USDA") regulations governing poultry. Therefore, this Order will only address Plaintiff's claims with respect to the ten remaining Buitoni Pasta products.

sonably likely to deceive the public because the Buitoni Pastas contain at least two ingredients that are unnatural, artificial, or synthetic. Specifically, Plaintiff alleges that all but one of the Buitoni Pastas contain both synthetic xanthan gum and soy lecithin, and that all of the Buitoni Pastas contain a synthetic soy lecithin. *Id.*, ¶ 16.

Plaintiff claims that in late June or early July 2013, she saw Defendants' "All Natural" label on the Buitoni Three Cheese Tortellini and Buitoni Spinach Cheese Tortellini at a Vons market in La Verne, California. *Id.*, ¶ 9. Based on the "All Natural" label of the Buitoni Pastas, Plaintiff allegedly believed that the products were "All Natural" and that they did not contain any unnatural, artificial, or synthetic ingredients.[3] Plaintiff alleges that in reliance on Defendants' "All Natural" representation, she purchased both Buitoni Three Cheese Tortellini and Buitoni Spinach Cheese Tortellini for $5.00 each. Plaintiff alleges that the Buitoni Pastas were not "All Natural" as represented, and she was injured because she would not have purchased the two Buitoni Pastas if she knew the true facts about them. *Id.*, ¶ 9.

Based on the alleged false and misleading labeling of Buitoni Pastas consisting of the "All Natural" term, Plaintiff has alleged the following claims: (1) California Unfair Competition Law ("UCL") and (2) California Consumer Legal Remedies Act ("CLRA"). *See, generally,* First Amended Complaint.

## II. Legal Standard

■ A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High–Line Medical Instruments Co., Inc.,* 922 F.Supp. 299, 304 (C.D.Cal.1996) (quoting *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

■ In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must

---

**3.** Defendants request the Court to take Judicial Notice of color copies of the Buitoni Pastas labeling attached to the Declaration of Amanda Skyrm for the thirteen Buitoni Pasta products challenged by Plaintiff in the FAC. In deciding a Rule 12(b)(6) Motion, the Court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002). However, the Court may consider documents that are incorporated by reference but not physically attached to the complaint if they are relevant to Plaintiff's claims and no party questions their authentic-

ity. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). Plaintiff refers to the ingredients of Defendants' Buitoni Pastas several times in the First Amended Complaint, and, unfortunately, includes a virtually illegible "exemplar of the package of the Spinach Cheese Tortellini Product" in the First Amended Complaint. First Amended Complaint, ¶ 17. Plaintiff does not dispute the accuracy of the exhibits Defendants have submitted to the Court in their Request for Judicial Notice. Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice.

state with particularity the circumstances constituting fraud or mistake." Fed. R.Civ.P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D.Cal.1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F.Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981) *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981)).

■ "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially no-

ticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.; Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994).

■ Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir.1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. Discussion

■ The CLRA and UCL, which are the basis of Plaintiff's first and second claims, are California consumer protection statutes. The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. The CLRA also prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ.Code § 1770. Claims made under these statutes are governed by the "reasonable consumer" test which focuses on whether "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008) (holding that claims under UCL, CLRA, and FAL "are governed by the 'reasonable consumer' test") (*citing Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)). The reasonable consumer standard requires a probability "that a significant portion of the

general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496, 508, 129 Cal.Rptr.2d 486 (2003); *see also Hill v. Roll International Corp.,* 195 Cal.App.4th 1295, 1300–01, 128 Cal.Rptr.3d 109 (2011) (holding that the "reasonable consumer" is not the "least sophisticated consumer" or an "unwary consumer," but "[r]ather, California courts consistently have looked to the ordinary consumer within the larger population") (*citing Lavie,* 105 Cal.App.4th at 505–06, 508–10, 129 Cal.Rptr.2d 486).

▓▓▓ The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss. *See Williams,* 552 F.3d at 938. However, in certain instances, the Court can properly make this determination and resolve such claims based on its review of the product packaging. *See Brockey v. Moore,* 107 Cal. App.4th 86, 100, 131 Cal.Rptr.2d 746 (2003) ("the primary evidence in a false advertising case is the advertising itself"). Thus, where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. *See Rooney v. Cumberland Packing Corp.,* 2012 WL 1512106 (S.D.Cal. Apr. 16, 2012) (dismissing without leave to amend a complaint alleging that "Sugar in the Raw" was deceptive because it was actually processed and not natural sugar); *Werbel v. Pepsico, Inc.,* 2010 WL 2673860 (N.D.Cal. July 2, 2010) (holding that, as a matter of law, no reasonable consumer would be led to believe that "Cap'n Crunch's Crunch Berries" cereal contained real fruit berries despite the use of the word berries in the product); *Sugawara v. Pepsico, Inc.,* 2009

WL 1439115 (E.D.Cal. May 21, 2009) (same); *Videtto v. Kellogg USA,* 2009 WL 1439086 (E.D.Cal., May 21, 2009) (dismissing without leave to amend UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA,* 2007 WL 4766060 (C.D.Cal. Sept. 19, 2007) (same).

▓▓▓ In this case, Plaintiff alleges that the "All Natural" labeling on Defendants' Buitoni Pastas is false, misleading, and reasonably likely to deceive the public because the Buitoni Pastas contain at least two ingredients that are unnatural, artificial, or synthetic. However, Plaintiff cannot state a claim under the CLRA or UCL regarding Defendants' allegedly false, misleading, and deceptive "All Natural" labeling because she fails to offer an objective or plausible definition of the phrase "All Natural," and the use of the term "All Natural" is not deceptive in context.

With respect to a definition of the phrase "All Natural," Plaintiff offers several conflicting definitions of the term in her First Amended Complaint. For example, Plaintiff offers the Webster's Dictionary definition of "natural," meaning "produced or existing in nature" and "not artificial or manufactured." First Amended Complaint, ¶ 18. However, even Plaintiff admits that this definition clearly does not apply to the Buitoni Pastas because they are a product manufactured in mass (*see, e.g.,* First Amended Complaint, ¶¶ 1, 10–11, and 14–15), and the reasonable consumer is aware that Buitoni Pastas are not "springing fully-formed from Ravioli trees and Tortellini bushes."[4] Opposition, 8:24–25.

4. The reasonable consumer is also aware that the ingredients in Buitoni Pastas, such as

sugar, wheat, and skim milk, do not come directly from plants, trees, or livestock. Thus,

The other definitions of "natural" offered by Plaintiff are equally implausible. In another attempt to define "natural," Plaintiff alleges that none of the ingredients in a "natural" product are "artificial" as that term is defined by the Food and Drug Administration ("FDA"). *See* 21 C.F.R. § 101.22(a)(1). With respect to Buitoni Pastas, Plaintiff alleges that xanthan gum, soy lecithin, sodium citrate, maltodextrin, sodium phosphate, disodium phosphates, and ferrous sulfate (collectively, the "Challenged Ingredients") are "unnatural, artificial and/or synthetic ingredients."[5] First Amended Complaint, ¶¶ 22–27. However, Plaintiff fails to allege that any of the Challenged Ingredients in Buitoni Pastas are "artificial" as defined by the FDA. In addition, the FDA definition of "artificial" applies only to flavor additives, and Plaintiff also fails to allege that any of the Challenged Ingredients in Buitoni Pastas are present in the product specifically as an added "flavor." Therefore, this definition of "natural" is clearly not applicable in this case.

In her final failed attempt to offer a plausible definition, Plaintiff alleges that none of the ingredients in a "natural" product are "synthetic" as that term is defined by the National Organic Program ("NOP"), which regulates products labeled as "organic." However, because Buitoni Pastas are not labeled as "organic," the definition of "synthetic" under the NOP does not apply. In addition, the Challenged Ingredients that Plaintiff claims are "synthetic" under the NOP are expressly permitted in products labeled "organic."

*See* 7 C.F.R. § 205.605(b) (identifying synthetic substances allowed in products labeled as "organic"). Consumers generally conflate the notions of "natural" and "organic," or hold products labeled "organic" to a higher standard than products labeled "natural," and, thus, it is implausible that a reasonable consumer would believe ingredients allowed in a product labeled "organic," such as the Challenged Ingredients, would not be allowed in a product labeled "all natural." *See Astiana v. Kashi Co.,* 291 F.R.D. 493, 507–08 (S.D.Cal.2013) (holding that "consumers ... often equate 'natural' with 'organic' or hold 'organic' to a higher standard").

Plaintiff also offers the FDA's 1991 informal statement made as a result of its efforts to decide whether to adopt a definition of the term "natural" in support of her argument. However, as Plaintiff concedes, the FDA's "informal policy" regarding the definition of "natural" "does not establish a legal requirement."[6] *Ries v. Hornell Brewing Co., Inc.,* 2010 WL 2943860, *5 (N.D.Cal. July 23, 2010); *see also* 21 C.F.R. § 10.85(d), (e), and (j). Ultimately, the FDA and Federal Trade Commission ("FTC") declined to adopt a definition of "natural" because "natural may be used in numerous contexts and may convey different meanings depending on that context. Thus, the Commission does not have a basis to provide general guidance on the use of the term." 75 Fed.Reg. 63552–01. Given the FTC's findings that the term "natural" can be used in numerous contexts, it is implausible that "a significant portion of the general consuming public or

---

this definition of "natural" cannot apply to the ingredients in Buitoni Pastas.

5. In her Opposition, Plaintiff concedes that she does not know whether ferrous sulfate is in any of the Buitoni Pastas, and it is not listed as an ingredient in any of the Buitoni Pastas.

6. Moreover, even the FDA's "informal policy" would permit the inclusion of some artificial and synthetic ingredients, such as the Challenged Ingredients in found in the Buitoni Pastas, in products labeled as "natural."

of targeted consumers" would be deceived or mislead by the use of the term "All Natural" on the Buitoni Pastas.

Finally, Buitoni Pastas are not only labeled "All Natural" on the front of the package, but, as Plaintiff concedes, they are also labeled "All Natural" on the back of the package, and the "All Natural" term on the back of the package appears immediately above the list of ingredients. Therefore, to the extent there is any ambiguity regarding the definition of "All Natural" with respect to each of the Buitoni Pastas, it is clarified by the detailed information contained in the ingredient list. *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D.Cal. Apr. 16, 2012) (holding that no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated in several places that the sugar was turbinado-sugar (a processed sugar)); *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563 (N.D.Cal. Oct. 4, 2013) (holding that the plaintiffs claims that they would not have purchased the products if they had known the products contained sugar or dried cane syrup, "is contradicted by the fact that the plaintiffs nonetheless purchased the products despite the fact that the sugar content is listed right next to the ingredients list, as the images in their Complaint reflect"); *Gitson v. Trader Joe's Co.*, 2013 WL 5513711 (N.D.Cal. Oct. 4, 2013) (holding that reasonable consumer would not be deceived into thinking soy milk was dairy when the label said it was not); *Viggiano v. Hansen Natural Corp.*, 2013 WL 2005430 (C.D.Cal. May 13, 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the [product] clear"). In this case, the ingredient list is entirely consistent with the use of the term "All Natural" on the front and back of the package.

The Court concludes that Plaintiff has failed to allege either a plausible objective definition of the term "All Natural" or her subjective definition of the term "All Natural" that is shared by the reasonable consumer. Accordingly, Plaintiff has failed to allege how the term "All Natural" could be deceptive to a consumer acting reasonably under the circumstances. In addition, the Court concludes that the use of the term "All Natural" on the Buitoni Pastas packaging is not deceptive as a matter of law. *Kane v. Chobani, Inc.*, 2013 WL 5289253 (N.D.Cal. Sept. 19, 2013) ("Because the labels clearly disclosed the presence of the [allegedly unnatural ingredients] it is not plausible that Plaintiffs believed, based on Defendant's '[o]nly natural ingredients' or 'all natural' representations, that the [product] did not contain [the challenged ingredients]"). Therefore, Defendants' Motion is **GRANTED**, and because amendment is futile, Plaintiffs' first and second counts are **DISMISSED without leave to amend.**

## IV. Conclusion

For all the foregoing reasons, Defendants' Motion is **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED without leave to amend,** and this action is **DISMISSED with prejudice.**

IT IS SO ORDERED.