Gregory BROD, on behalf of himself and all others similarly situated, Plaintiff,

v.

SIOUX HONEY ASSOCIATION, COOPERATIVE, Defendant.

No. C–12–1322 EMC.

United States District Court, N.D. California.

Feb. 27, 2013.

Jon Michael Herskowitz, Miami, FL, Laurence D. King, Linda M. Fong, Kaplan Fox & Kilsheimer LLP, San Francisco, CA, Robert Ian Lax, Lax LLP, New York, NY, for Plaintiff.

David Ian Dalby, Hinshaw & Culbertson LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Docket No. 56)

EDWARD M. CHEN, District Judge.

### I. INTRODUCTION

Plaintiff Gregory Brod ("Brod") has filed a class action lawsuit against Defendant Sioux Honey Association Cooperative ("Sioux Honey") alleging that it violated state law by marketing its "Sue Bee Clover Honey" in California simply as "Honey," without disclosing the fact that it did not contain pollen. Plaintiff contends that the California Food and Agricultural Code requires "honey products marketed in California that have had their natural pollen unnecessarily removed" to be "sold with a notation which discloses this fact." Second Amended Class Action Complaint ("SAC") (Docket No. 55) ¶ 5. Brod advances causes of action under California's Consumers Legal Remedies Act and Unfair Competition Law, as well as for breach of express and implied warranty. Sioux Honey has filed a motion to dismiss Brod's complaint arguing that Plaintiff and members of his purported class lack standing to sue based on the facts alleged in the complaint, that the claims asserted by Plaintiff are preempted by federal food and drug laws, that Plaintiff's causes of action fail to state a claim under Fed.R.Civ.P. 12(b)(6), and that Plaintiff's claims are barred by the Commerce Clause of the U.S. Constitution. *See* Def.'s Mot. to Dismiss (Docket No. 56). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendant's motion for the reasons discussed herein.

### II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Gregory Brod bought a bottle of Sue Bee Clover Honey ("Sue Bee Honey") at a store in San Rafael, California some time before January 12, 2012. Brod Decl. ¶ 3 (Docket No. 1). Prior to purchasing the bottle, Brod read the "Clover Honey" label and the "U.S. Grade A Fancy White Pure Honey" representation printed on the front of the bottle. SAC ¶ 8. At some point after his purchase, Brod learned that all the pollen had been filtered out of the bottle of Sue Bee Honey during the manufacturing process. *See* SAC ¶¶ 6, 21–22. He alleges that Sioux Honey's act of filtering all naturally-occurring pollen out of Sue Bee Honey renders it incapable of meeting certain California Food and Agricultural Code standards for products sold as "honey," making it unlawful to sell the product in the state "without disclosures that it is filtered or pollen-free." SAC ¶ 15 (citing Cal. Food & Agric. Code § 29413(e)); *see also* SAC ¶¶ 5, 14. Had Plaintiff known that Sioux Honey's Sue Bee Honey did not comply with California standards, he alleges that he and similarly situated consumers "would not have purchased the Sue Bee Honey." SAC ¶¶ 8, 25.

On January 19, 2012, Brod filed a class action lawsuit against Sioux Honey in the Superior Court for the State of California in Marin County. Not. of Removal ¶ 1 (Docket No. 1). Sioux Honey, a citizen of the State of Iowa, thereafter removed the suit to federal district court pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction. Not. of Removal ¶¶ 3–5. Brod filed a First Amended Class Action Complaint on April 23, 2012, *see* Docket No. 19, and a Motion to Relate this case to another one called *Ross v. Sioux Honey Association,* C–12–1645, *see* Docket No. 20, which this Court subsequently granted, *see* Docket No. 23. Sioux Honey then filed a motion to dismiss the amended complaint, which this Court granted with leave to amend by an order dated September 11, 2012. *See* Motion to Dismiss (Docket No. 25); Order (Docket No. 52). Brod filed his Second Amended Complaint on October

11, 2012. Brod's SAC advances the following four causes of action:

(1) That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" violated the California Consumers Legal Remedies Act (CLRA), Cal. Civ.Code §§ 1750, *et seq.*, because the product did not include "disclosures that it is filtered or pollen free as required by the California Food & Agriculture Code's proscription against false or misleading labeling of honey." SAC ¶ 41;

(2) That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" violated California's Unfair Competition Law (UCL), Cal. Bus. and Prof. Code §§ 17200, *et. seq.*, because Sioux Honey's failure to adequately disclose the product's lack of pollen both violates provisions of the California Food & Agriculture Code, and is likely to deceive California consumers. SAC ¶¶ 45–53;

(3) That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" breached Sioux Honey's express warranty that the product "was of normal quality and standards for such goods in this locale," and "was of a characteristic grade which complied with all applicable laws, and which had not been economically adulterated." SAC ¶¶ 54–60; and

(4) That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" breached California's implied warranty of merchantability, codified at Cal. Comm. Code § 2314, because the product "does not comply with the ordinary standards for such goods" and was thus "not fit for its ordinary purpose and intended consumption as 'honey,'" and because it is marketed and sold "in contravention of the explicit statutory standards for honey in the State of California" and is thus "not merchantable in the State of California." SAC ¶¶ 63, 68.

Plaintiff seeks on behalf of himself and all other persons who purchased Sue Bee Honey in California after January 1, 2010, both "a permanent injunction or other appropriate equitable relief" prohibiting Sioux Honey from "marketing its Sue Bee Honey to consumers in the State of California," and "actual and statutory damages, restitution and punitive damages," as well as "reasonable costs and attorneys' fees." SAC at 12–13.

Sioux Honey filed the now pending motion to dismiss on October 25, 2012. Def.'s Mot. to Dismiss (Docket No. 56). Sioux Honey argues, among other things, that Plaintiff and similarly situated members of the purported class lack standing to sue under Article III of the U.S. Constitution because they have not incurred an "injury-in-fact," that federal food and drug laws preempt Plaintiff's argument that California law mandates disclosure of the removal of pollen from honey, that Plaintiff's four causes of action fail to state a claim under Fed. R. Civ. P. 12(b)(6), and that Plaintiff's claims are otherwise barred by the Commerce Clause of the U.S. Constitution. In his opposition brief, Brod concedes that his third cause of action for breach of an express warranty fails to state a claim. *See* Pl.'s Opp. Br. (Docket No. 62) at 2 n. 1 ("Plaintiff does not contest Sioux's motion with regard to the SAC's claim for Breach of Express Warranty"). Brod opposes the balance of Defendant's legal arguments.

## III. *DISCUSSION*

### A. *Constitutional Standing*

Sioux Honey's Motion to Dismiss asks this Court to dismiss Brod's class action complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. In its motion, Sioux Honey argues that Brod and other similarly situated class members do not have "the required injury-in-fact" to assert standing for their claims "under

Article III of the United States Constitution." Def.'s Mot. to Dismiss at 3.

Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir.2010). "Because standing ... [pertains] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1121–22. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Here, Sioux Honey asserts only a facial challenge; therefore, the Court must accept all allegations of fact in the complaint as true. *See Warren*, 328 F.3d at 1139 ("Where jurisdiction is intertwined with the merits, we must assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record.") (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987)) (internal quotation marks omitted).

### 1. *Legal Standard*

■ "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

> To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

*Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Although evidence is to be viewed and inferences are to be drawn in Plaintiff's favor (as the nonmoving party), Plaintiff has the burden of proving that he has standing to sue under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of constitutional standing]"); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th Cir.2006) (noting that "[t]he burden to establish prudential standing is on the plaintiff bringing the action").

### 2. *Injury–In–Fact*

This Court has already considered and rejected a similar standing argument advanced by Sioux Honey in its motion to dismiss the First Amended Complaint ("FAC"). *See* Order Granting Defendant's Motion to Dismiss (Docket No. 52). Brod's Second Amended Complaint parallels the FAC in stating claims against Sioux Honey that stem *solely* from its labeling and marketing Sue Bee Honey in California stores simply as "honey," despite the fact that all naturally occurring pollen has been filtered or otherwise removed from the product. SAC ¶¶ 41, 49–51, 56, 63. Sioux Honey does not seem to contest Plaintiff's allegation that it removes pollen from Sue Bee Clover Honey. *See e.g.* Def.'s Mot. to Dismiss at 6 ("Nonetheless, the U.S. Grade A Honey legend confirms that the honey has been filtered and contains only trace elements of pollen.").

In his complaint, Brod argues that Cal. Food & Agric. Code § 29413(e)[1] makes non-salable any "honey" that has had its pollen removed unless the honey is sold with an accompanying disclosure that it is "filtered or pollen-free." SAC ¶ 15. As a result of Sioux Honey's marketing and labeling of Sue Bee Honey as "honey" even though all pollen has been filtered out, Brod claims that he and other members of the prospective class were either misled into purchasing the product, or were misled about an essential characteristic of the product. *See* SAC ¶ 25 ("Had Plaintiff and members of the Class known the Sue Bee Honey did not comply with California standards—which they would have known had Defendant made the necessary disclosures that the honey was filtered or pollen-free—Plaintiff and members of the Class would not have purchased the Sue Bee Honey."); ¶ 56 ("... Sue Bee Honey did not conform to the promises or affirmations of fact made by [Sioux Honey] to Plaintiff and members of the Class, in that the product has been economically adulterated through the unnecessary removal of its natural pollen.").[2] Consequently, Plaintiff alleges that he and "Class members suffered economic losses" ranging from the entire purchase price of the Sue Bee Honey to "the value of the Sue Bee Honey had it been fit for its ordinary purposes." SAC ¶¶ 43, 70.

■ Defendant does not challenge, and, indeed, Plaintiff's complaint seems to satisfy, those elements of standing that require "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant," and the likelihood that Plaintiff's "injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. at 167, 117 S.Ct. 1154. Rather, Defendant's standing challenge focuses on Plaintiff's ability to demonstrate an "injury-in-fact." *See* Def.'s Mot. to Dismiss at 3 ("Brod does not have the required injury-in-fact standing under Article III of the United States Constitution to assert any claims." He does not state "how he was injured by [the pollen's] alleged absence from the [Sue Bee] honey."). Just as this Court found in its previous order granting Defendant's first motion to dismiss, Brod's Second Amended Complaint and allegation of "economic injury" satisfy the injury-in-fact requirement for Article III standing.

This Court's order granting Defendant's earlier motion to dismiss analyzed the California Supreme Court's holding in *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011), in which the Supreme Court found that a plaintiff had standing to bring a suit alleging that "Kwikset falsely marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts

---

1. Section 29413(e) reads as follows:
   Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added).

2. Sioux Honey points out that Plaintiff's SAC "does not allege that he expected pollen was in the honey." Def.'s Mot. to Dismiss at 3. Plaintiff doesn't seem to explicitly allege this fact in the SAC, but, as the quoted passages suggest, the Court finds that such an expectation can be reasonably inferred from the allegations put forward in the amended complaint.

or involved foreign manufacture," allegedly in violation of state unfair competition and false advertising laws.[3] *Kwikset Corp.*, 51 Cal.4th at 317, 120 Cal.Rptr.3d 741, 246 P.3d 877. The Supreme Court analogized the *Kwikset* plaintiff's complaint to one "based on a fraud theory involving false advertising and misrepresentations to consumers." *Id.* at 326, 120 Cal.Rptr.3d 741, 246 P.3d 877. In such cases, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct," which meant that the plaintiff in *Kwikset* had to "allege economic injury arising from reliance on Kwikset's misrepresentations" in order to establish standing. *Id.* at 327, 120 Cal.Rptr.3d 741, 246 P.3d 877. The Court found that plaintiff's complaint satisfied these requirements because he specifically alleged that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Id.* at 327–28, 120 Cal.Rptr.3d 741, 246 P.3d 877. "Simply stated," the Court reasoned, "labels matter ... the marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Id.* at 328, 120 Cal.

Rptr.3d 741, 246 P.3d 877. Where, as in *Kwikset,* a customer relies

> on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent.

*Kwikset,* 51 Cal.4th at 329, 120 Cal.Rptr.3d 741, 246 P.3d 877 (emphasis in original). Thus, the Court held that "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement ... by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation." *Id.* at 330, 120 Cal.Rptr.3d 741, 246 P.3d 877.

As in *Kwikset,* Brod alleges that Sioux Honey labeled its Sue Bee Honey as "honey," that this representation was false as a matter of law under applicable sections of the California Food and Agricultural Code, that consumers saw and relied on the product's label for its truth in purchasing Sioux Honey's "honey," and that Plaintiff and his proposed class members would not have bought the product had they known it

---

**3.** The *Kwikset* Court explicitly noted that its analysis of injury-in-fact for standing purposes followed the meaning ascribed to that term in federal constitutional law. While the *Kwikset* case was "pending on appeal, the [California] electorate enacted Proposition 64 (Gen. Elec. (Nov. 2, 2004)), which called into question [plaintiff's] standing to challenge Kwikset's country of origin representations." *Kwikset*, 51 Cal.4th at 316, 120 Cal.Rptr.3d 741, 246 P.3d 877. The text of Proposition 64 expressly adopted the established federal

meaning of the phrase "injury-in-fact," declaring "[i]t is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been *injured in fact under the standing requirements of the United States Constitution.*" *Id.,* 51 Cal.4th at 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (quoting Prop. 64, § 1, subd. (e)) (emphasis in original). Absent binding authority to the contrary, the Court once again finds *Kwikset* persuasive.

did not contain pollen. Plaintiff's allegations match precisely with the standard laid out by the *Kwikset* Court for establishing injury-in-fact. This Court held in *Brod* that "under *Kwikset*, California law recognizes an injury when a product is mislabeled in violation of the law and consumers rely on that labeling in purchasing the product or paying more than they otherwise would have. That injury, defined and established by California law, satisfies the injury-in-fact requirement of Article III." *Brod v. Sioux Honey Ass'n Co-op.*, 895 F.Supp.2d 972, 978 (N.D.Cal.2012). Following both *Kwikset* and this Court's order in *Brod*, the Court once again finds that Brod's complaint satisfies the injury-in-fact requirement for standing under Article III.

### 3. *Sioux Honey's Objections*

As it did in its prior motion to dismiss, Sioux Honey cites to a number of "benefit of the bargain" cases in support of its argument that Plaintiff lacks Article III standing to sue, including *Rivera v. Wyeth–Ayerst Laboratories*, 283 F.3d 315 (5th Cir.2002). In *Rivera*, the Fifth Circuit found that a group of plaintiffs lacked standing to sue Wyeth for its role in distributing Duract, a non-steroidal anti-inflammatory drug prescribed for short-term management of acute pain, because they could demonstrate no concrete injury flowing from their use of the drug. Plaintiffs had sued Wyeth on the theory that it had failed to adequately warn of the drug's dangers in violation of the Texas Deceptive Trade Practices Act, the implied warranty of merchantability, and common law unjust enrichment. *Rivera*, 283 F.3d at 317. The *Rivera* court found that "[b]y plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that—the benefit of her bargain." *Id.* at 320. Despite plaintiffs' claims to the contrary, "[h]ad Wyeth provided additional warnings or made Duract safer, the plain-

tiffs would be in the same position they occupy now," and as such "they cannot have a legally protected contract interest." *Id.* Defendant also cites in support of its argument the following: *Medley v. Johnson & Johnson*, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (finding that plaintiffs lacked standing where the economic injury for which they sought redress was the price they paid for shampoo and no adverse health consequences were pled), *Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. Apr. 19, 2012) (finding that plaintiff's complaint amounts to no more than subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders Defendant's product unhealthy, and, as such, is insufficient to establish injury-in-fact), *Boysen v. Walgreen Co.*, C 11–06262 SI, 2012 WL 2953069 (N.D.Cal. July 19, 2012) (finding that plaintiff's complaint regarding defendant's alleged failure to disclose the presence of "material and significant" levels of arsenic and lead in its "100% Apple Juice" and "100% Grape Juice" did not satisfy injury-in-fact standing requirements), and *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed.Appx. 257 (3rd Cir.2010) (finding no standing to assert claims related to the presence of lead in lipstick at an amount exceeding that permitted in candy under federal law).

These cases are insufficient to render *Kwikset* inapposite. With the exception of *Rivera*, each of these cases addresses an alleged failure to disclose the *presence* of a substance that made a product indiscernibly dissimilar from what a consumer thought they were purchasing. Brod's complaint, in contrast, alleges that Sioux Honey failed to disclose the *absence* of a substance whose removal allegedly "economically adulterated" the product such that "[i]f Plaintiff and the members of the Class had known the true facts, they would not have purchased the Sue Bee Honey or

paid as much as they did for the Sue Bee Honey." SAC ¶¶ 56, 59. In *Guerrero v. Target Corp.*, 889 F.Supp.2d 1348 (S.D.Fla. 2012), a Florida District Court drew a similar distinction in an analogous honey labeling case. That Court distinguished *Medley v. Johnson & Johnson Consumer Cos.*, 2011 WL 159674, and rejected defendant's argument that plaintiff lacked standing, noting "[i]n the present case, the issue is not whether the honey Plaintiff purchased contained an unsafe substance, but rather that the honey lacked an ingredient, pollen, that Plaintiff contends is an essential element of honey under Florida law." *Id.*, 889 F.Supp.2d at 1354. Unlike *Medley, Boysen v. Walgreen Co.*, 2012 WL 2953069, and *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed.Appx. 257, the plaintiff in *Guerrero* "alleged that the honey she purchased did not contain the health benefits of pollen that she expected, was less valuable than honey that contained pollen and that she would not have purchased the honey if she knew it did not contain pollen," and thus "contends that the product she purchased was not what she expected." *Id.* at 1354 and n. 4. Under those circumstances, the *Guerrero* court held that "Plaintiff has adequately plead an injury in fact." *Id.* at 1354.

*Rivera*, a Fifth Circuit decision that is not binding on this Court, is likewise distinguishable. Where, as here, the absence of a putatively valuable component is alleged to affect consumer acceptance and the price consumers are willing to pay, there is injury-in-fact sufficient to confer Article III standing. In contrast, in *Rivera*, the court found that plaintiffs received a product that performed the medical benefits they expected, and thus there was no allegation that consumers paid more for the product than they otherwise would have had the warning been disclosed. *See Rivera v. Wyeth–Ayerst Laboratories*, 283 F.3d at 320 ("Duract worked. Had Wyeth provided additional warnings or made Du-

ract safer, the plaintiffs would be in the same position they occupy now. Accordingly, they cannot have a legally protected contract interest."). This distinction places Brod in a different position from the plaintiff in Rivera, who, by her "own admission, paid for an effective pain killer, and she received just that-the benefit of her bargain." *Rivera*, 283 F.3d at 320. Brod, in contrast, claims he did *not* obtain the benefit of the expected bargain.

Finally, Sioux Honey asserts that Brod's SAC ought to be dismissed in light of this Court's earlier order granting Defendant's motion to dismiss because "[Sioux Honey] properly labeled its honey as honey and therefore there was no misrepresentation under federal law and the contrary California law was preempted." Def.'s Mot. to Dismiss at 4. Defendant apparently argues that because Brod cannot prove his case in chief, neither can he show that he suffered an injury-in-fact, and therefore lacks standing under Article III. Sioux Honey's argument misconstrues the scope of assessing constitutional standing, conflating it with the merits of the legal claims asserted.

For the purpose of evaluating Brod's standing to sue, it is enough that he alleges Sioux Honey had a duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential consumers. Whether or not his claim properly construes controlling state law to demonstrate the existence of that duty will be examined *infra*, not here. *See Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to as-

sure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' ") (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Whether or not Brod's complaint properly construes California's Food & Agricultural Code, and whether or not Sioux Honey's alleged conduct violated those provisions, are not part of an inquiry into Plaintiff's Article III standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("It is well established, however, that *before a federal court can consider the merits of a legal claim*, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.") (emphasis added); *see also Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (a court's threshold inquiry into "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"). Thus, the Court rejects Sioux Honey's invitation to dismiss Brod's complaint on standing grounds.

## B. *Federal Labeling Requirements*

Sioux Honey's motion to dismiss next challenges Plaintiff's interpretation of California's Food and Agricultural Code, and its alleged disclosure requirement relating to the removal of pollen; the motion frames the argument in light of federal labeling laws. Defendant argues that be-

cause Sioux Honey complied with applicable federal law, Plaintiff's state law causes of action premised on the non-disclosure of the removal of pollen from Sue Bee Honey are necessarily preempted. This aspect of the Defendant's motion is brought pursuant to Fed.R.Civ.P. 12(b)(6).[4] The Court finds that Defendant's construction of federal labeling requirements is too broad, and that Plaintiff's claims ought not be dismissed on the basis of federal preemption.

### 1. *Legal Standard*

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to

---

4. The Court notes the observation of its sister court in the Eastern District of Wisconsin that, although "Sioux Honey moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)," the doctrine of federal preemption "is an affirmative defense, so the 'more appropriate motion would have been one under Rule 12(c)' for judgment on the pleadings because 'plaintiffs have no duty to anticipate affirmative defenses.'" *Regan v. Sioux Honey Ass'n Co-op.*, 12–C–758, 921 F.Supp.2d 938, 940, 2013 WL 395127 at *1 (E.D.Wis. Jan. 31, 2013) (quoting *S.C. John-*

*son & Son, Inc. v. Transport Corp. of Am., Inc.*, 697 F.3d 544, 547 (7th Cir.2012)). As "no one has made anything of this point," this Court, like the Seventh Circuit in *S.C. Johnson*, "will let it pass." *S.C. Johnson & Son, Inc.*, 697 F.3d at 547. Regardless, the Court finds that "the same standard applies to motions made under either Rule 12(b) or Rule 12(c), such that any distinction between them is merely semantic." *Douglass v. Dist. of Columbia*, 605 F.Supp.2d 156, 161 (D.D.C. 2009) (citations and internal quotation marks omitted).

avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S.Ct. at 1949.

### 2. Federal Food, Drug, and Cosmetic Act

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.,* establishes national uniform food labeling requirements, including those governing the labeling of honey. Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act ("NLEA"), whose stated purpose was, among other things, to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods." *National Council for Improved Health v. Shalala,* 122 F.3d 878, 880 (10th Cir.1997) (quoting H.R.Rep. No. 101–538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). As part of the NLEA, Congress added a provision to the FDCA that expressly preempts state laws addressing certain covered subjects, including food la-

beling requirements. *See* 21 U.S.C. § 343–1(a). That section provides in relevant part as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—
>
> . . .
>
> (3) any requirement for the labeling of food of the type required by section . . . 343(i) . . . that is not identical to the requirement of such section.

21 U.S.C. § 343–1(a)(3).

Section 343(g) of the FDCA provides that where federal law has prescribed a "standard of identity" to a food, the label affixed to that food must "bear[ ] the name of the food specified in the definition and standard, and, insofar as may be required by other regulations, the common names of optional ingredients . . ." 21 U.S.C. § 343(g). Neither party asserts that honey is "a food for which a definition and standard of identity has been prescribed by regulations." 21 U.S.C. § 343(g). *See e.g.* Def.'s Mot. to Dismiss at 7. Where no "standard of identity" exists, § 343(i) of the FDCA declares a food misbranded "[u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient . . ." 21 U.S.C. § 343(i).

■ This Court held in *Brod v. Sioux Honey Ass'n Co-op.,* 895 F.Supp.2d at 980–81, that, despite the removal of all pollen, Sue Bee Honey's common or usual name was and is "honey." [5] Sioux Honey at-

---

**5.** In *Brod,* this Court concluded that the "common or usual name" of Sue Bee Honey was "honey," and that § 343(i) of the FDCA required it to be labeled as such. *Brod v. Sioux Honey Ass'n Co-op.,* 895 F.Supp.2d at 980. In reaching this conclusion, the Court noted that Sue Bee Honey met "the typical definition of honey found in dictionaries," despite the fact that it contained no pollen.

*Id.* This Court also considered a number of statutory definitions of honey compiled from "states throughout this nation," and found that "[n]one of these definitions require that honey contain non-filtered pollen." *Id.* Further, the Court took judicial notice of prior U.S. Department of Agriculture regulations that established varying grades of honey, and

tempts to transform this Court's ruling in *Brod* into one that, on the basis of federal preemption, restricts California from imposing a disclosure requirement of the type contemplated by the Plaintiff. Defendant's effort is misguided.

"Congress has the power to preempt state law" by operation of the Supremacy Clause in Article VI of the U.S. Constitution. *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.,* 593 F.3d 936, 941 (9th Cir.2010) (citations omitted). Of these three types of federal preemption, the first best characterizes the operation of § 343–1(a), which, through § 313(i), expressly preempts any state law requiring a food to be labeled with something other than its common or usual name. *See Reid v. Johnson & Johnson,* 11 CV 1310 L BLM, 2012 WL 4108114 at *5 (S.D.Cal. Sept. 18, 2012) ("This provision [§ 343–1(a)] expressly preempts state laws addressing certain subjects that are 'not identical to' various standards set forth by the FDCA."). Thus, as this Court concluded in *Brod,* any California law that requires honey merchants to label honey that has been filtered of all pollen as anything but "honey" is preempted under the FDCA. *See Brod v. Sioux Honey Ass'n Co-op.,* 895 F.Supp.2d at 981–82.

This, however, does not mean that California could not impose a separate disclosure requirement of the type suggested by Plaintiff. This Court noted in *Brod* that:

found that those regulations supported a finding that "the common or usual name for Sue Bee Clover Honey is 'honey.'" *Id.; see* U.S.

its finding of preemption does not imply that California is powerless to act in this arena. For instance, if California required disclosure on its labels that the honey was e.g., "filtered" or "pollen free," that would appear not to conflict expressly with § 343(i). California simply cannot under § 343(i) ban the use of the label "honey" for products which are commonly and usually called honey.

*Id.* at 981. Importantly, § 343–1(a) contains an express savings clause stating that it "shall not be construed to preempt any provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343–1(a)]." Pub.L. No. 101–535, § 6(c)(1) (not codified; *see* 21 U.S.C. § 343–1 Historical and Statutory Notes) (emphasis added). The Supreme Court has held that "an express definition of the pre-emptive reach of a statute 'implies'-*i.e.*, supports a reasonable inference-that Congress did not intend to pre-empt other matters." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). The savings clause herein makes that explicit. Consequently, "the only State requirements that are subject to preemption [under § 343–1(a)] are those that are affirmatively different from the Federal requirements." *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 372 (N.D.Cal.2010) (citing *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F.Supp.2d 527, 532 (S.D.N.Y.2008)). Other than § 343(i)'s "common or usual name" provision, Defendant has not cited to any other section incorporated by § 343–1(a) that would expressly preempt Plaintiff's interpretation of California's Food and Agricultural Code, and its alleged disclosure requirement relating to the removal of pollen.

Department of Agriculture "United States Standards for Grades of Extracted Honey," 16 Fed.Reg. 2463 (March 16, 1951).

Indeed, such an expansive reading of the preemptive reach of § 343–1(a) is unwarranted. "Health and safety issues have traditionally fallen within the province of state regulation. This is true of the regulation of food and beverage labeling and branding." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir.2009). In such areas of traditional state regulation, "a presumption against preemption" exists. *Id.* (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) ("In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest."). Furthermore, in discerning the proper scope of an express preemption provision, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

The Court finds that, were California to impose a requirement mandating that manufacturers disclose when pollen has been removed from honey, such a requirement would not be "affirmatively different" from the FDCA's "common or usual name" requirement so as to subject it to preemption under § 343–1(a). *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. at 372. A disclosure requirement of this type would not force manufacturers to call "honey" something other than "honey." Rather, it would require merchants like Sioux Honey to *supplement* their product's label with additional information that is not part of the product's name.

■ "In the interest of avoiding unintended encroachment on the authority of the States ... a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption," and "pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Defendant has not shown that Congress intended for § 343(i), through § 343–1(a), to preempt such supplemental disclosure requirements.[6] *Cf. Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (No finding of preemption under the FDCA where evidence did not clearly indicate Congress' intent to prohibit beverage companies from changing geographic origin labels to comport with state law).

## C. *California Disclosure Requirement*

Brod's four state law causes of action against Sioux Honey rest in large part on an alleged disclosure requirement contained in California's Food and Agricultural Code. Plaintiff contends that Cal. Food & Agric. Code § 29413(e) requires merchants who filter out all naturally-occurring pollen from products sold as "honey" to disclose to consumers that such honey "is pollen-free or filtered." SAC ¶ 21; *see also id.* ¶¶ 41, 49, 51, 56, 63 (identifying the failure to disclose the absence of pollen allegedly required under California law as underlying each cause of action). In the SAC, Brod states:

6. The Court respectfully disagrees with the contrary conclusion reached in *Regan v. Sioux Honey Ass'n Co-op.*, 921 F.Supp.2d at 943 n. 5, 2013 WL 395127 at *4 n. 5. As stated above, a California state law that requires honey merchants to disclose the removal of

all pollen from products whose common or usual name was "honey" would not expressly conflict with the FDCA's "common or usual name" provision (§ 343(i)), and, thus, would not fall within the scope of the FDCA's explicit preemption provision (§ 343–1(a)).

Pursuant to Cal. Food & Agric. Code § 29413(e), once pollen is removed from honey (except where unavoidable in the removal of foreign inorganic or organic matter) the condiment, under the California Food & Agriculture Code, is no longer salable in the state as "honey" *without disclosures that it is filtered or pollen-free.*

SAC ¶ 15 (emphasis added). Plaintiff also cites § 29673, which makes it "unlawful for any person to mislabel any container or subcontainer of honey or place any false or misleading statement on any wrapper, label, or lining of any container of honey." He further cites § 29416, which specifies that "[a] statement, design, or device is false and misleading, if the honey to which it apparently or actually refers does not conform in every respect to such statement." Plaintiff contends these three provisions create a requirement that honey lacking any naturally-occurring pollen "cannot be sold in the State of California simply as 'honey,' without an accompanying disclosure that it is filtered or pollen-free." SAC ¶ 23.

Sioux Honey disputes Brod's construction of California law. Defendant argues that "[t]here is no California requirement to disclose the filtered nature of honey and plaintiff's assertion that Cal. Ag.Code § [29413(e) ] is such a requirement misrepresents what the statute actually says." Def.'s Reply Br. (Docket No. 64) at 2. According to Defendant, Brod's claim "misinterprets [this] California law which does not require a disclosure concerning pollen content, but rather attempts to ban the use of the label 'honey' for products which are commonly or usually called honey." *Id.* at 3. "The best that plaintiff can do," according to Sioux Honey, "is assert that California could possibly adopt a labeling law requiring that pollen content be disclosed, but there presently is no such law." *Id.* at 2.

"The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985)). The California Food and Agricultural Code defines "honey" as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature." Cal. Food & Agric. Code § 29413(a). As noted above, § 29413(e) of the Food and Agricultural Code provides the following:

Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added). Section 29671, in turn, states "[i]t is unlawful for any person to . . . sell any honey, adulterated honey or any product which is marked, labeled, or designated as honey, *which does not conform to the provisions of this chapter."* Cal. Food & Agric. Code § 29671 (emphasis added). Additionally, § 29673 makes it "unlawful for any person to *mislabel* any container or subcontainer of honey or place any false or misleading statement on

any wrapper, label, or lining of any container of honey, or on any placard which is used in connection with or which has reference to any honey." Cal. Food & Agric. Code § 29673 (emphasis added).

As this Court held in its order granting Defendant's first motion to dismiss, these provisions of state law, by their terms, require that any product labeled as honey *must* contain pollen to be *lawfully sold* in California. *Brod v. Sioux Honey*, 895 F.Supp.2d at 980–82. They do not, as Plaintiff suggests, allow Sioux Honey to lawfully sell honey which has had all pollen removed on the condition that Defendant include "a notation which discloses this fact." SAC ¶ 5. Prohibiting the sale of certain honey is one thing. Requiring disclosure is another. Indeed, even if Defendant had included the disclosure Plaintiff seeks, it would still be in violation of § 29413(e).

Plaintiff has cited no law clearly mandating the purported disclosure (as opposed to banning its sale). Indeed, the recent opinion in *Strobridge v. Safeway, Inc.*, No. RG12–611078 (appended to Defendant's Request for Judicial Notice (Docket No. 64–1) as Ex. 1) serves as confirmation that California has yet to enact such a disclosure requirement. In *Strobridge*, Judge Brick of the Alameda County Superior Court sustained defendant Safeway's demur to plaintiff Strobridge's complaint alleging similar "misbranding" claims related to the sale of non-pollinated honey. Judge Brick found that the same provisions of the Food and Agricultural Code cited by Brod in this matter "do not require a manufacturer to indicate the absence of pollen (not unavoidably removed) on the labels of honey sold in California; nor do they render such a failure 'mislabeling' or 'misbranding.' " *Strobridge v. Safeway, Inc.*, No. RG12–611078 at 3:18–20.

Further, several provisions of the Food and Agricultural Code pertaining to honey explicitly state when merchants· are required to make disclosures about the honey they sell. Since at least 1967, California has imposed a labeling requirement on honey merchants to disclose when honey sold in the state has been imported from a foreign country. *See* Cal. Food & Agric. Code § 29643 ("Every container and subcontainer of imported honey shall be labeled with the name of the territory or foreign country from which it is imported . . ."). Similarly, California law directs honey merchants to "conspicuously mark" each container of honey with "[o]ne of the United States grades which are established for honey by the United States Department of Agriculture." Cal. Food & Agric.Code § 29611(c). Indeed, the very same section of the Food and Agricultural Code requires merchants to disclose the *addition* of pollen. *See id.* § 29611(c) ("This subdivision does not, however, apply to honey to which pollen has been added, if the amount of pollen added is visible and each such container is plainly and conspicuously labeled with the words 'pollen added.' "). Thus, when the California legislature desired to impose a labeling requirement, it knew how to do so; it did it explicitly.

Plaintiff's argument that § 29413(e) *implicitly* requires merchants to disclose the removal of pollen from honey is neither supported by the text of statute, nor is it in harmony with the many *explicit* disclosure requirements found in California's statutory scheme addressing honey production, manufacture, and sale. The fact that Plaintiff cannot cite a provision of the Food and Agricultural Code, or any other provision of California law, that states in similarly direct terms that a merchant must disclose to consumers when pollen has been removed from honey strongly implies that no such requirement exists. In cases "where, as here, the statute's language is plain, 'the sole function of the

courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. 1026 (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). The plain language of § 29413(e) prohibits the sale of honey that has been filtered of all pollen. It does not impose a disclosure requirement.

### D. *Failure to Disclose*

Plaintiff's complaint alternately alleges that Sioux Honey violated the CLRA, UCL, and breached an implied warranty of merchantability by misleading California consumers into purchasing Sue Bee Honey despite the fact that it was "filtered or pollen-free." SAC ¶ 23. Brod alleges that "[h]ad Plaintiff and members of the Class known the Sue Bee Honey did not comply with California standards—which they would have known had Defendant made the necessary disclosures that the honey was filtered or pollen free—Plaintiff and members of the Class would not have purchased the Sue Bee Honey." *Id.* ¶ 25. As established *supra*, Plaintiff has not shown that Sue Bee Honey failed to comply with "California standards" insofar as that phrase refers to Plaintiff's impermissible construction of Cal. Food and Agric. Code § 29413(e).

However, § 29673 of the Food and Agricultural Code independently makes it "unlawful for any person to mislabel any container or subcontainer of honey or place any *false or misleading statement* on any wrapper, label, or lining of any container of honey." Cal. Food & Agric. Code § 29673 (emphasis added). Plaintiff alleges that Defendant's failure to disclose the pollen content of Sue Bee Honey rendered its labeling false or misleading by misrepresenting the quality, characteristics, and/or ingredients of the product, in violation of the CLRA, UCL, and an implied warranty of merchantability. *See* SAC ¶¶ 39–40 (CLRA); 49–50(UCL); 63, 68

(implied warranty). As such, Plaintiff's three causes of action are arguably cognizable independent of any alleged failure to comply with § 29413(e).

Sioux Honey argues, nonetheless, that Plaintiff's CLRA, UCL, and implied warranty claims ought to be dismissed for failing to state a viable claim under Rule 12(b)(6). Defendant argues, among other things, that Brod's understanding of Defendant's allegedly false representations would not be shared by a "reasonable consumer," and that Plaintiff has not plausibly shown that the absence of pollen from Sue Bee Honey materially affects consumer acceptance and pricing of the product. Def.'s Mot. to Dismiss at 9–10, 17–18.

#### 1. *Misrepresentation Under the CLRA and UCL*

█ The CLRA makes unlawful the act of "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," Cal. Civ.Code § 1770(a)(7), as well as "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." *Id.* § 1770(a)(5). The UCL prohibits any "unlawful, unfair[,] or fraudulent business act or practice," including engaging in "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Under the UCL, "unfair" business practices exist when (1) the harm to the consumer outweighs the utility of a practice to the defendant, or (2) when a business practice violates public policy as declared by "specific constitutional statutory or regulatory provisions." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir.2010) (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir.2007) and *Gregory v. Albertson's, Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.

Rptr.2d 389 (2002)). The "unfair" prong of the UCL prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)). *See also Kasky v. Nike, Inc.*, 27 Cal.4th at 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 ("Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.") (internal quotation marks omitted).

■ To state a valid claim under the UCL and CLRA on a misrepresentation theory, a plaintiff must show that a "reasonable consumer" is "likely to be deceived" by the allegedly misleading statement. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (quotations and citations omitted). *See also Williams v. Gerber Products Co.*, 552 F.3d at 938 ("these California statutes are governed by the 'reasonable consumer' test"); *McKinniss v. Sunny Delight Beverages Co.*, CV0702034–RGKJCX, 2007 WL 4766525 at *2 (C.D.Cal. Sept. 4, 2007) (that a plaintiff must "show that a reasonable consumer would be misled" by a misrepresentation or omission is a "threshold question under any UCL, [False Advertising Law], or CLRA claim."). " 'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508, 129 Cal.Rptr.2d 486 (2003). Rather, the reasonable consumer standard adopts the perspective of the "ordinary consumer acting reasonably under the circumstances." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th at 512, 129 Cal.

Rptr.2d 486. The reasonable consumer need not be "exceptionally acute and sophisticated." *Donaldson v. Read Magazine*, 333 U.S. 178, 189, 68 S.Ct. 591, 92 L.Ed. 628 (1948); *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th at 509, 129 Cal.Rptr.2d 486 (same). To the contrary, questions of judgment calling for the perspective of a reasonable consumer are "determined in the light of the effect [such a question] would most probably produce on ordinary minds." *Donaldson v. Read Magazine*, 333 U.S. at 189, 68 S.Ct. 591.

■ Plaintiff has not pled sufficient facts to plausibly show that the reasonable consumer would be misled into believing that Sue Bee Honey contained pollen. The SAC alleges that "members of the California public are likely to be deceived by Defendant's marketing of the Sue Bee Honey because Sue Bee Honey omits to disclose that it has had its natural pollen unnecessarily removed through notation that it is filtered or pollen free." SAC ¶ 50. However, Plaintiff fails to plead any facts establishing a reasonable consumer would likely be so deceived. Indeed, Brod does not cite a single source to support his legal theory that "members of the public would likely be deceived" by Sioux Honey's omission. *See* Pl.'s Opp. Br. at 10. It is certainly possible that a particularly sophisticated consumer might consider pollen to be a valuable component of honey, such that the non-disclosure of its removal from Sue Bee Honey would likely result in deception to him or her. This, however, does not establish that the *reasonable* consumer would expect honey to contain pollen. Plaintiff's complaint is silent on this point with the exception of certain threadbare conclusory recitals that "Plaintiff and members of the Class would not have purchased the Sue Bee Honey" had they known that it was "filtered or pollen-free." *See e.g.* SAC ¶ 25. "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to state a plausible claim. *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. No such plausible claim about the expectation of a reasonable consumer is stated here.

Indeed, this Court has previously catalogued a number of state statutes and dictionary definitions of "honey," and noted that *none* identify pollen as a necessary or even notable constituent. *See Brod v. Sioux Honey Ass'n Co-op.,* 895 F.Supp.2d at 982. California's own statutory definition of honey omits any reference to pollen, and has done so since at least 1967. *See* Cal. Food & Agric. Code § 29413(a).[7] As noted above, California's honey statutes specifically require merchants to disclose when pollen is *added* to honey. *See* Cal. Food & Agric. Code § 29611(c). There is no parallel labeling provision regulating the *removal* of pollen. Moreover, the fact that the Department of Agriculture's "United States Standards for Grades of Extracted Honey" assigned "Grade A" to honey characterized by its "freedom from air bubbles, *pollen grains,* or fine particles of any material which might be suspended in the product" for much of the latter twentieth century, combined with the statutory and dictionary definitions of honey referenced above, strongly suggest that pollen has not traditionally been considered a constituting element of honey such that its undisclosed removal would likely be considered deceptive by the reasonable consumer. *See* 16 Fed.Reg. 2465–66 (emphasis added).

Nor is there any merit to Plaintiff's contention that the reasonable consumer would be deceived by Sioux Honey's failure to disclose that its labeling of Sue Bee Honey does not comply with Cal. Food and Agric. Code § 29413(e). At the hearing on Defendant's motion, Plaintiff's counsel described the "crux" of his client's "likely-to-be-deceived claim in [the] second amended complaint" as follows:

> We are alleging that the reasonable consumer expects if there is a law governing their foodstuffs that they go to buy, that that law has been complied with. And if it's not complied with, it should be disclosed.

Transcript of Proceedings (Docket No. 71) at 3:12–13; 6:6–9. However, as discussed *supra,* California's honey labeling requirement is preempted by the FDCA. Section 29413(e) is without force or effect to the extent that it purports to ban Sue Bee from labeling its honey as "honey."

Furthermore, even if one could construct a theoretical bases for finding reasonable consumer expectation based on constructed notice of § 29413(e), such a consumer would likewise have constructed notice that the Sue Bee Honey label states it is "Grade A" which, as noted above, means under federal standards that the honey is *free* of pollen grains. In short, if the tool of constructed notice is used to inform consumer expectations, removal of pollen from Sue Bee Honey was in fact effectively disclosed on its label.

The Ninth Circuit has recognized that "whether a business practice is deceptive

---

**7.** Prior to its amendment in 2009, California's statutory definition of "honey" was as follows:

> "Honey" means the nectar of floral exudations of plants gathered and stored in the comb by honeybees. It is a levorotatory, contains not more than 20 percent of water, not more than 25 one hundredths of 1 percent of ash, not more than 8 percent of sucrose, its specific gravity is not less than 1.412, its weight not less than 11 pounds, 12 ounces per standard gallon of 231 cubic inches at 68 degrees Fahrenheit.

Cal. Food & Agric. Code § 29413 (amended by Stats. 2009, c. 388 (A.B. 1216), § 1). Neither this definition, nor the amended definition now in force, make any reference to pollen.

will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.,* 552 F.3d 934, 938. Although "[d]ecisions granting motions to dismiss claims under the [UCL] have occasionally been upheld" where a plaintiff fails to advance a plausible claim that a reasonable consumer was likely to be misled by a particular statement or advertisement, the Ninth Circuit has stated nonetheless that it is the "rare situation in which granting a motion to dismiss is appropriate." *Id.* at 939; *Cf. Werbel ex rel. v. Pepsico, Inc.,* C 09–04456 SBA, 2010 WL 2673860 at *3 (N.D.Cal. July 2, 2010) ("where a court can conclude *as a matter of law* that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate") (emphasis added).

The Court finds that this case is one such "rare situation." The claims put forward by Brod stand in sharp contrast to those advanced in the Ninth Circuit's *Williams* decision, in which the court reversed dismissal of false advertising claims at the pleading stage. *See Williams v. Gerber Products Co.,* 552 F.3d at 936 (finding that Gerber's "use of the words 'Fruit Juice' juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries" on its packaging for "Gerber's Fruit Juice Snacks" could lead a reasonable consumer to believe that the product contained the juices of the fruit depicted). Here, Plaintiff has failed to allege any facts to support his contention that the lack of a disclaimer on Sue Bee Honey regarding its non-pollinated state would deceive the reasonable consumer. Further, as a matter of law, Plaintiff cannot state that Defendant failed to comply with Cal. Food and Agric. Code § 29413(e). Thus, he cannot advance a derivative claim based on Defendant's failure to denote such "non-compliance" on Sue Bee Honey's label. Plaintiff's CLRA and UCL causes of action fail to state a claim upon which relief can be granted, and must therefore be dismissed under Rule 12(b)(6).

### 2. *Materiality Under the CLRA and UCL*

Plaintiff's CLRA and UCL claims also fail because Brod has not demonstrated that the absence of pollen from Sue Bee Honey is material to the reasonable or average consumer. In order to establish liability under these statutes, the omission or affirmative misrepresentation contained within an allegedly misleading statement must be "material" to a customer's evaluation of a product. *See In re Tobacco II Cases,* 46 Cal.4th 298, 326–27, 93 Cal. Rptr.3d 559, 207 P.3d 20 (2009) ("It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.") (internal quotation marks and citations omitted); *see In re Steroid Hormone Prod. Cases,* 181 Cal.App.4th 145, 157, 104 Cal.Rptr.3d 329 (2010) (finding potential CLRA liability where "a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product."). *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 n. 2 (9th Cir.2001) (materiality is a required element of fraud claims based on affirmative misrepresentation and omission). "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction in question.'" *In re Tobacco II Cases,* 46 Cal.4th 298 at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20 (quoting *Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 976–977, 64 Cal.Rptr.2d

843, 938 P.2d 903 (1997)) (internal citations omitted).

California courts have expressly adopted the "reasonable consumer" standard for adjudicating the materiality of an alleged misrepresentation. *See In re Google Ad-Words Litig.*, 5:08–CV–3369 EJD, 2012 WL 28068 at *8 (N.D.Cal. Jan. 5, 2012) (citing *In re Tobacco II Cases*, 46 Cal.4th at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20). For the reasons already discussed, Plaintiff has failed to allege facts giving "facial plausibility" to his claim that pollen (and its removal from honey) is of material concern to the ordinary consumer. The Second Amended Complaint provides no indication that the presence or absence of pollen "play[s] a substantial part" in the reasonable consumer's decision to purchase honey. *In re Tobacco II Cases*, 46 Cal.4th 298 at 326, 93 Cal.Rptr.3d 559, 207 P.3d 20. Again it is noteworthy that federal standards define "Grade A" as honey free from pollen grain, and states and dictionaries have consistently defined honey without regard to pollen content. The record before the Court suggests a "jury could not reasonably find that a reasonable man would have been influenced by" the failure to disclose the filtration of pollen. *Id.* at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20. As such, Plaintiff's CLRA and UCL causes of action premised on nondisclosure of a material fact do not state a viable claim under Rule 12(b)(6).

### 3. *Implied Warranty*

Plaintiff's final claim for relief is based on California's implied warranty of merchantability. The implied warranty of merchantability, codified at Cal. Com. Code § 2314, states that "[g]oods to be merchantable must be at least such as" to "[p]ass without objection in the trade, ... [a]re fit for the ordinary purposes for which such goods are used," and "[c]onform to the promises or affirmations of fact made on the container or label if any."

*Id.* § 2314(2). Brod alleges that "Defendant violated its implied warranties in that the Sue Bee Honey was not merchantable in the State of California, does not comply with the ordinary standards for such goods, and is not of the accepted standards of quality of such goods." SAC ¶ 63. Plaintiff supports his charge by alleging that Sue Bee Honey's "pollen was unnecessarily removed, which removal was not unavoidable in the removal of foreign inorganic or organic matter, and is in contravention of the explicit statutory standards for honey in the State of California." *Id.* Plaintiff's brief clarifies that "[w]hile the honey is not alleged to be defective or noncomestible, it is properly alleged to be of non-conforming quality and labeling and of less value than honey which complies with state standards." Pl.'s Opp. Br. at 19.

■■■■■ California's implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1296, 44 Cal. Rptr.2d 526 (1995) (citations and quotation marks omitted). The Court has already found that Sioux Honey's denomination of Sue Bee Honey as "Honey" complies with the "common or usual name" requirement of § 343(i) of the FDCA. *Brod*, 895 F.Supp.2d at 979–80. The Court has also found *supra* that Plaintiff's complaint fails to identify any disclosure provision of the California Food and Agricultural Code with which Sue Bee Honey is noncompliant, including the Code's food labeling and content disclosure provisions. Indeed, Food & Agric. Code § 29611(c) requires honey sold in the state to be marked with "[o]ne of the United States grades which are established for honey by the United States Department of Agriculture." *Id.*

§ 29611(c). As previously noted, Sue Bee Honey is marked "Grade A," defined by former federal regulations as honey from which pollen has been filtered. *See* 16 Fed.Reg. 2465–66. On these facts, the Court cannot conclude that Sue Bee Honey would not "pass without objection in the trade," or that it does not "conform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2).

Nor can the Court conclude that the jar of Sue Bee Honey purchased by Plaintiff was not "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2). "To prove breach of the implied warranty of merchantability, the plaintiff must prove that ... the product was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade, ... [and] the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm." *Andrade v. Pangborn Corp.*, C 02–3771 PVT, 2004 WL 2480708 (N.D.Cal. Oct. 22, 2004). Liability rests under this statutory provision "if the goods contain an impurity of such a nature as to render them unusable, and therefore unsalable, for the general uses and purposes of goods of the kind described." *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 694, 268 P.2d 1041 (1954). As discussed *supra*, Plaintiff's complaint has not pled any facts in support of his contention that Sue Bee Honey was not "fit for the *ordinary* purposes for which the product is used." *Id.* (emphasis added). He has not pled sufficient factual content to lend "facial plausibility" to his claim that Sue Bee Honey was unfit for the ordinary purposes to which the ordinary user (as opposed to the specialized consumer) would subject the product. *See Ashcroft v. Iqbal*, 129 S.Ct. at 1949. Consequently, Plaintiff's

implied warranty cause of action fails to meet the pleading standards imposed by Fed.R.Civ.P. 8.

### E. *Commerce Clause*

Sioux Honey further argues that California's laws regulating the sale of honey violate the dormant Commerce Clause. *See* Def.'s Motion to Dismiss at 18–19. Defendant bases its argument on the belief that "one set of label rules" would "apply in California and another for everywhere else." *Id.* at 19. The Supreme Court has held, "[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). As this Court holds that Plaintiff's state law labeling and disclosure claims are either preempted by the FDCA or otherwise not in accordance with California law, Defendant's Commerce Clause argument is moot.

## IV. *CONCLUSION*

For the reasons discussed above, the Court hereby **GRANTS** Sioux Honey's motion to dismiss. While Plaintiff has standing to assert his claims under Article III, he has not shown that Sioux Honey has a duty under state law to disclose to purchasers of Sue Bee Honey that all naturally occurring pollen has been removed from the product. Nor has Plaintiff alleged sufficient facts to support his state law claims that Defendant's nondisclosure exposes it to liability under the causes of action advanced in the Second Amended Complaint.

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15. "This policy is to be

applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.2003). *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (implying leave to amend should be granted in the absence of undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party, or futility of amendment). However, "[l]eave to amend need not be given" under Rule 15 if it would be futile to do so." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.1989). The Court concludes that any further amendment to the complaint beyond the Second Amended Complaint herein would be futile. This dismissal is, therefore, with prejudice. The Clerk shall enter judgment and close the file.

This order disposes of Docket No. 56.

IT IS SO ORDERED.